BENJAMIN S. MILLS, as Executor, etc., Respondent, *v.* DANIEL R. DAVIS et al., as Administrators, etc., Appellants.

113       243
77 AD¹244
e  78 AD⁴511

As against a promissory note, payable on demand with interest, the statute of limitations begins to run at its date.

*It seems* the provision of the Code of Civil Procedure (§ 395), declaring that, in order to take a case out of the statute of limitations, an acknowledgment or promise to pay in writing, signed by the party to be charged, is necessary, but that this "does not alter the effect of a payment of principal or interest;" does not change the nature or effect of a part payment. The old rule is recognized and continued and the payment may be proved by oral evidence.

In order to make an indorsement upon a promissory note of part payment made by the holder, without the privity of the maker, competent as evidence to meet the defense of the statute of limitations, it must appear that it was made at the time when its operation would be against the

interest of the party making it; and so, at least, that it was made before
the statute could have operated.

*It seems* that even then it is a question for the jury as to whether the pay-
ment was, in fact, made.

Upon a reference under the statute of a claim by an executor against the
estate of a deceased person, which claim was founded upon a promissory
note, the defense was the statute of limitations.  The note bore indorse-
ments of payment of interest made by plaintiff.  Plaintiff himself and
two other witnesses who were entitled under the will each to one-third
of whatever was collected on the note, were permitted to testify, under
objection and exception, that the indorsements were made by plaintiff
during the lifetime of plaintiff's testator.  *Held,* that the testimony was
incompetent under the Code of Civil Procedure (§ 829).

Reported below, 41 Hun, 415.

(Argued March 15, 1889; decided April 16, 1889.)

APPEAL from judgment of the General Term of the Supreme
Court in the second judicial department, entered upon an order
made July 23, 1886, which affirmed a judgment in favor of
plaintiff and an order confirming the report of a referee.

This was a reference under the statute of a disputed claim
against an estate.

The facts, so far as material, are stated in the opinion.

*Thomas J. Ritch, Jr.,* for appellants.  Conceding that
indorsements on the note are admissible as evidence, there should
be legal proof that they are truthful records of the transactions
they purport to describe.  (*McLaren* v. *McMartin,* 36 N. Y.
88, 89.)  The testimony is perfectly consistent with the fact
that the last five indorsements of interest were all made at the
same time, and perhaps during the last day of the life of the
maker.  (*Roseboom* v. *Billington,* 17 Johns. 186.)  The party
shall not testify to any personal transaction which he may
have had with the deceased concerning a personal transaction
against the executor, etc.  Nor can his written statement of
a transaction which he has had with the deceased be any
higher or better evidence than his own oral testimony to the
same effect.  (Code Civil Pro. § 839 ; *Roseboom* v. *Billington,*
17 Johns. 187; *Card* v. *Card,* 39 N. Y. 317; *Jacques* v.
*Elmore,* 7 Hun, 675 ; 60 N. Y. 610.)  A fact that could not

be proved by the executor directly cannot be established infer-entially by his testimony. (47 N. Y. 554; 4 Hun, 507; 5 id. 468; 16 id. 100; 2 id. 131.)

*Thomas S. Strong* for respondent. When the indorsements were made the statute of limitations had not attached, and the making of them was against the interest of the party making them. The maker of the note was alive and the note collect-ible. These facts are sufficient to make them evidence; they raise a question of fact for the jury. (*Roseboom* v. *Billington,* 17 Johns. 182; *Risley* v. *Wightman,* 13 Hun, 163; Smith Lead Cas. 725.) The executor was not disqualified from testifying. His only interest was his commission as executor, that did not disqualify him. (*In re Wilson,* 103 N. Y. 374.) The testimony of the witnesses is not as to transactions with the deceased maker of the note, but solely as to extraneous facts, nor were the indorsements themselves personal transactions with the deceased maker. (*Pinny* v. *Orth,* 88 N. Y. 447; *Denise* v. *Denise,* 110 id. 562; *Lewis* v. *Merritt,* 98 id. 206; *Wads-worth* v. *Herrmans,* 85 id. 639.)

DANFORTH, J. The claim which gave occasion for this pro-ceeding was a writing in these words :

"$300.                    SETAUKET, *November* 17, 1864.

"For value received, I promise to pay to Clarissa Darling, or order, three hundred dollars on demand, with lawful interest.
                    "ELIZABETH JAYNE."

It does not appear when Clarissa Darling, the payee, died, but letters of administration were issued upon her estate July 10, 1871, and it is stated by counsel for the respondent that the payor, Elizabeth Jayne, died September 10, 1884. Some time · between that date and the 12th of March, 1886, the plaintiff, as executor of Clarissa Darling, presented the note as a claim against the estate of Elizabeth Jayne to her executor, and he, doubting the justice of it, a referee was appointed to hear and determine the matter. Upon the trial it appeared that the

body of the note was written by Mary Bayles, formerly Mary Darling, a daughter of the payee. There was enough evidence to call for the opinion of the referee as to the genuineness of the note, and by his finding that fact is established.

But, although bearing interest and payable on demand, the statute of limitations began running at the date of the note (*Wenman* v. *Mohawk Ins. Co.*, 13 Wend. 268; *Herrick* v. *Woolverton*, 41 N. Y. 581; *McMullen* v. *Rafferty*, 89 id. 456), and, unless something occurred to obstruct its passage, the bar fell in November, 1870, and if raised then, it fell again in 1876, and again in 1882, and was well on its way for the fourth blow, when, after the expiration of more than twenty years from the time an action might have been commenced upon the note, it was, so far as appears from the testimony, for the first time presented to any person or party concerned in its validity, and then was doubted and disputed.

The statute limiting the time of enforcing a civil remedy declares that an action upon a contract must be commenced within six years after the cause of action has accrued (Code of Civil Pro. §§ 380, 382), and that, in order to take a case out of the operation of these provisions, an acknowledgment or promise in writing, signed by the party to be charged, is necessary (Id. § 395); but there is a proviso that this enactment " does not alter the effect of a payment of principal or interest " (§ 395.) There is no suggestion or pretense that by any such acknowledgment or promise, as the statute requires, a new and continuing contract was created, nor is there any allegation or suggestion of payment of any portion of principal, and, therefore, the inquiry before the referee was limited to the single question whether there had been any such payment of interest as would take the demand out of the statute. That fact, if it existed, might be proved in the same manner as before an acknowledgment or a new promise was required to be in writing. The statute changes neither the nature nor effect of part payment, nor does it prescribe any new rule of evidence in regard to it. It merely recognizes and continues the rule as established by the previous decisions of the courts. (*Bank*

v. *Ballou*, 49 N. Y. 155; *Harper* v. *Fairley*, 53 id. 442.) It may still be proved by parol. (*Cleave* v. *Jones*, 6 Exch. 573; *Bank* v. *Ballow*, *supra*.) There is no testimony of that character showing payment. Although the claimant at once assumed the burden of showing that the case was freed from the statutory bar, the only proofs of payment offered by him were certain writings upon the back of the note, made by himself and reading as follows:

"Interest paid on the within note to Nov. 17, 1868.

"CLARISSA DARLING,
"By B. S. M."

"Interest paid on the within note to Nov. 17, 1870."
"Interest paid on the within note to Nov. 17, 1875."
"Interest paid on the within note to Nov. 17, 1876."
"Interest paid on the within note to Nov. 17, 1877."
"Interest paid on the within note to Nov. 17, 1878."

An indorsement or memorandum of part payment is held competent evidence for the consideration of a jury as showing an acknowledgment of debt and to rebut the presumption of its payment arising from the lapse of time. But in order to render such indorsements admissible, it must appear that when made there was a pecuniary interest with which they were at variance. It was, therefore, held in *Roseboom* v. *Billington* (17 Johns. 181), that to make such indorsement admissible it must be proven to have been made before the presumption of payment attached. Nothing less has been required from the day of that decision to the present time, and the case is decisive in favor of this appeal. The note then in suit was dated on the 9th day of January, 1808, payable in two years. An action was brought upon it in 1817, and the statute of limitations was interposed as a defense. Upon the trial the plaintiff offered to prove an indorsement on the note in his own handwriting, dated October 18, 1811, acknowledging the receipt of $30, in part payment of the note. This was objected to and excluded. The defendant had a verdict and the plaintiff brought a writ of error.

SPENCER, Ch. J., states the question to be " whether an indorsement of a payment on a promissory note, in the hand-writing of the payee, without any other evidence of the fact of payment, ought to have been submitted to the jury as proof of the payment, and thereby to take the case out of the operation of the statute of limitations." And, after a discussion of the matter, upon principle and authority, says : " An indorsement, therefore, on a bond or note, made by the obligee or promisee, without the privity of the debtor, cannot be admitted as evidence of payment in favor of the party making such indorsement, unless it be shown that it was made at a time when its operation would be against the interest of the party making it. If such proof be given, it would, I think, be good evidence for the consideration of the jury."

Something more, then, is needed than the indorsement even, to carry the case to the jury. It must appear to have been made by a creditor and at a time when he had no motive to give a false credit, and, at least, before the statute of limitations can have operated. (*Read* v. *Hurd*, 7 Wend. 409 ; *Hulbert* v. *Nichol*, 20 Hun, 459 ; *Briggs* v. *Wilson*, De G., M. & G. 12.) And even then it is for the jury to say whether the payment was, in fact, made, and they may inquire, among other things, whether, upon the whole, the interest of the creditor may not be promoted rather than impaired by giving effect to the indorsement, and if so, reject it altogether. In the case at bar it is at this point that the plaintiff's case fails. Of itself neither indorsement has any tendency to show when it was made. It would be equally true whether made on a particular seventeenth day of November or at any other time. It recites or declares a fact, and is consistent as a narrative of a past or an assertion of a present act. Each might have been made after the time when the statute had taken effect. Nor is there extrinsic proof of the time when the indorsements were made, nor evidence of explanatory circumstances.

The plaintiff, under an objection grounded on section 829, and to which I shall later on refer, says the note came into his " possession as a part of the estate of Clarrissa Dar-

ling, deceased," and that the indorsements of interest are in his handwriting. He was asked by his counsel: "Were all the indorsements made by you during the lifetime of Elizabeth Jayne?" The question was objected to by the defendant, on the grounds that (1) it was leading; (2) was a declaration in his own favor, and (3) inadmissible under section 829. He answered, "They were." The wife of the plaintiff was a daughter of the deceased, and as such entitled to a third of whatever should be received upon the note. She testified to having "seen the note from year to year since her mother's death." Asked by plaintiff's counsel: "Have you seen the writing on the back of this paper?" Answered "Yes, sir." Again asked, "Did you see those writings from time to time as they were made?" Answered, "Yes, sir." Again, "Were they all made during the life of Elizabeth Jayne?" Answered, "Yes, sir." Asked, "The money which was indorsed as received on that note, did any of it go to you?" Answered, "Yes, my share." Question, "When did you receive the last money on it?" Answer, "I don't remember." She says, "I know when the different indorsements were made, only by the note. The note tells how many different indorsements there are on it. I have no knowledge of it, nothing but the note." Although greatly aided by a cross-examination which gave full opportunity to her to indulge in inference and imagination, it could hardly be said that she knew anything of the matter inquired of, except from the plaintiff, her husband, either as to the indorsements or the receipt of money. It is enough, however, that the witness is silent as to when the last indorsement was made. And that is really the only one of importance in this inquiry. Unless that was made within six years of the death of the maker of the note, the rest are of no moment.

But aside from these considerations, and in view of the statute (Code, § 829), which prohibits "a party or person interested in the event" from testifying in his own behalf or interest against the executor of a deceased person concerning a personal transaction between himself and the testator, the

plaintiff was improperly allowed to testify as to the length of time he had held possession of the note, or that the indorsements on the note were in his handwriting, and made during the lifetime of the testatrix. Each circumstance had a material bearing upon the issue, and each was important only because it was a transaction to which the decedent was a party. To the first, as acquiescing in the continued possession of the note and thereby permitting an implication of its validity, and to the other, as payor of the money referred to in the indorsement. Unless that money was paid by her, or the indorsement made with her implied assent, it was of no significance.

It was also error to allow the evidence of Catharine, the wife of the plaintiff. She was the daughter of the payee of the note, the plaintiff's testatrix, and, to the extent of one-third of the amount, entitled to share in the recovery. She was, therefore, a person interested in the event of the proceeding. The same remark applys to Mary Baylis. She was a daughter of the payee, a sister of the preceding witness, and personally interested in like manner. Except for the testimony of these three witnesses, the plaintiff and the two daughters of the testatrix, there would have been no evidence to suggest even a liability upon the note. No part of it was competent, and because of its admission and the other errors above referred to, the judgment of the court below should be reversed and a new trial granted, costs to abide the event.

All concur, except Earl, J., not voting.

Judgment reversed.